UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PYC, LLC d/b/a PROSPECT
YACHT CLUB, LLC                                                                  Plaintiff

v.                                                                Case No. 3:23-cv-124-RGJ-CHL

CARRIER MARINE SERVICES                                                         Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

The Court previously entered final judgment. [DE 27]. Defendant Carrier Marine Services ("Carrier Marine") now moves "for a declaratory judgment or in the alternative to alter or amend a judgment." [DE 28]. Carrier Marine's alternative remedy seeks to add a counterclaim post-judgment and requests a monetary judgment in Carrier Marine's favor. [*Id.* at 164–66]. Plaintiff PYC, LLC d/b/a Prospect Yacht Club, LLC (the "Yacht Club") responded [DE 29] and Carrier Marine replied [DE 30]. For the following reasons, Carrier Marine's motion is **GRANTED**.

**I. BACKGROUND**

The Yacht Club owns a riverfront commercial property with a dock. [DE 1 at 2]. In August 2022, the Yacht Club hired Carrier Marine, which is an unincorporated business, to remove a tree stump and trunk from underneath the dock. [DE 1-2 at 11]. The parties' agreement contemplated "an eight hour minimum" of work including a diver's "displacement of sediment," billed at $800 per hour for a minimum payment of $6,400. [*Id.*]. The agreement also provided that "unknown or unanticipated conditions" could trigger "additional charges." [*Id.* at 12]. After two days' work, the tree stump and trunk still were not removed. [DE 1 at 4–5]. The Yacht Club "instructed" Carrier Marine "to stop performing work." [*Id.* at 5]. Carrier Marine then invoiced the Yacht Club "for 16 hours of commercial dive services in the amount of $12,800." [DE 17 at 64]. When the Yacht Club

refused to pay that amount, Carrier Marine asserted a maritime lien over the dock and filed a UCC financing statement with the Kentucky Secretary of State. [DE 1 at 5].

The Yacht Club responded to Carrier Marine's lien and financing statement by initiating this case, seeking declaratory relief on three points. The Yacht Club's complaint asserted that (Claim I) the dock was not a "vessel" and, therefore, Carrier Marine's maritime lien was invalid; (Claim II) the parties' agreement did not create a security interest and, therefore, Carrier Marine's UCC financing statement was invalid; and (Claim III) that an "actual controversy exists . . . as to the amount owed under the General Contract for Services," and more specifically that the Yacht Club owed Carrier Marine only $6,400 for its work performed under the parties' agreement and not the $12,992.00 invoiced by Carrier Marine. [*Id.* at 6–8]. In April 2023, Carrier Marine appeared *pro se* and answered the Yacht Club's complaint.[1] That answer asserted no counterclaims. [DE 8].

In June 2023, Carrier Marine obtained legal counsel who entered his appearance [DE 12] and participated in a Rule 26(f) conference with the Yacht Club's counsel [DE 14]. At that conference, Carrier Marine asked for the Yacht Club's consent to an amended answer that would include a counterclaim. [DE 28 at 162; DE 29 at 171]. The Yacht Club did not agree to accept a counterclaim by Carrier Marine. [DE 28 at 162; DE 29 at 171]. So, Carrier Marine chose to file an amended answer without an explicit counterclaim.[2] [DE 17]. Carrier Marine did, however, allege facts in the amended answer in support of Carrier Marine's argument that it was entitled payment for two days' worth of work and asserted a demand for relief pursuant to that argument. [*Id.* at 63–

---

[1] Businesses that are legally distinct entities, such as corporations and limited liability companies, must appear through counsel. However, as an unincorporated sole proprietorship, Carrier Marine was able to appear *pro se*. *See Digital Filing Sys., LLC v. Aditya Int'l*, 323 F. App'x 407, 408 n.1 (6th Cir. 2009) (citing *NLRB v. Consol. Food Servs., Inc.*, 81 F. App'x 13, 14 n.1 (6th Cir. 2003)).

[2] It appears that Carrier Marine's amended answer was improperly filed without the Yacht Club's written consent and without any motion for leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Yacht Club, however, never contested the amended answer and cited it in their motion for summary judgment. As a result, the Court deemed it the operative responsive pleading.

2

65, 68]. In responding to the Yacht Club's allegations, Carrier Marine asserted that the parties agreed that "if Plaintiff elected to retain the services of [Carrier Marine] for more than one day, Plaintiff would additionally compensate [Carrier Marine] in accordance with Section 4 of the contract entitled Additional Charges." [*Id.* at 64]. Carrier Marine also stated that it "sent an invoice to Plaintiff for 16 hours of commercial dive service in the amount of $12,800, plus interest on the unpaid balance in the amount of $192, for a total of $12,992." [*Id.* at 65]. In the amended answer's prayer for relief, Carrier Marine requested "(ii) [that] the Plaintiff be required to pay the full amount due to [Carrier Marine] under the Contract, (iii) that Plaintiff be required to pay the interest on its unpaid balance to date in accordance with the Contract, [and] (iv) that Plaintiff be required to reimburse [Carrier Marine] for its attorney fees in accordance with the Contract . . . ." [DE 28 at 162].

After discovery, the Yacht Club moved for summary judgment on its declaratory judgment claims. [DE 19]. Carrier Marine's response, like its amended answer, requested that the Yacht Club "be required to pay the full amount due . . . under the Contract," with interest "or . . . in the alternative, that the Complaint be Dismissed with Prejudice to and with all costs to Plaintiff, [the Yacht Club], including attorney fees incurred by [Carrier Marine]." [DE 21 at 97–98]. However, Carrier Marine did not cross-move for summary judgment in its favor.

The Yacht Club's motion for summary judgment was granted in part and denied in part. [DE 26]. Regarding Claims I and II, the Court determined that the Yacht Club's dock was not a "vessel" and, consequently, that Carrier Marine's maritime lien and UCC financing statement were invalid. [DE 26 at 147–54]; *accord* 1 U.S.C. § 3; 46 U.S.C. § 31342. The Court's final judgment granted the Yacht Club declaratory relief on Claims I and II, but as set forth below in more detail, it dismissed Claim III with prejudice. [DE 27]; *accord* Fed. R. Civ. P. 56(f)(1).

3

As to Claim III, regarding amounts owed to Carrier Marine under the parties' agreement, the Court found that "[a]lthough an actual controversy exists between [the Yacht Club and Carrier Marine] as to the amount owed under the contract," the Court rejected the Yacht Club's arguments. More specifically, the Court found "that the contract created an hourly rate, not a flat fee structure"; that Carrier Marine had performed all work at the Yacht Club's request; and that Carrier Marine "would be entitled to payment of $12,800 for services provided, with applicable interest for late payment consistent with the rate established by the contract." [DE 26 at 155–58]. The Court's opinion therefore settled the existing controversy as to the amount due under the contract in Carrier Marine's favor. *See* Fed. R. Civ. P. 56(g). But, because Carrier Marine "never asserted a counterclaim" along with its prayer for relief, the Court stated that was unable to grant a declaratory judgment for Carrier Marine. [DE 26 at 158]. In the alternative, Carrier Marine requested "that the Complaint be Dismissed with Prejudice." [DE 21 at 98]. As a result, the Court dismissed Claim III with prejudice. [DE 27 at 160].

### III. ANALYSIS

Carrier Marine moves for a declaratory judgment, or in the alternative, to alter or amend a judgment under Rule 59 or to grant relief from a final judgment under Rule 60. [DE 28 at 161]. Under its first section, headed "Argument and Prayer for Declaratory Judgment," Carrier Marine "moves this Court, in the interest of justice, to accept its counterclaim as set forth below and/or enter a Declaratory Judgment in its favor stating that [the Yacht Club] owes [Carrier Marine] compensation for its services rendered to [the Yacht Club] in the amount of $12,800 plus the contractually provided interest, 1.5% per month for 25 months, on the outstanding balance, for a total of $17,600." [*Id.* at 162–63]. Carrier Marine then presents arguments under Rule 59 and Rule 60 to alter or amend judgment and to grant relief from final judgment, respectively. [*Id.* at 163–64]. The motion's final section is captioned as a "supporting declaration, counterclaim and prayer

4

for relief." [*Id.* at 164]. While this section contains a drafted counterclaim, there is no amended or supplemental pleading attached to the motion.[3] As part of this drafted counterclaim, Carrier Marine requests in the alternative, for "the Court to issue its determination that CMS is owed $12,800 plus contractual interest to a form that [Carrier Marine] can enforce against [the Yacht Club] in state court." [*Id.*].

The Yacht Club opposes the motion on grounds that Carrier Marine failed to assert a compulsory counterclaim prior to judgment. [DE 29 at 170–71]. Additionally, the Yacht Club asserts that there are not permissible grounds to alter or amend judgment under Rule 59. [*Id.* at 171–72]. The Yacht Club's response brief appears to suggest that the impetus for Carrier Marine's request is "to include interest on the total amount [the Yacht Club] owes." [*Id.* at 170]. The Yacht Club asserts that Carrier Marine's request "should be denied because Defendant did not bring a counterclaim for the recovery of this amount." [*Id.* at 170]. This language implies to the Court that the Yacht Club is refusing to pay just the interest on the amounts due under the contract. Yet, Carrier Marine's motion asks the Court to grant declaratory judgment stating that the Yacht Club owes "$12,800 plus the contractually provided interest," [DE 28 at 162–62], which suggests to the Court that the Yacht Club is refusing to pay *any* amount due under the contract. The Court will proceed with its analysis based on the language in Carrier Marine's motion, which requests a declaratory judgment asserting that Carrier Marine is entitled to payment of $12,800 with applicable interest for late payment consistent with the rate established by the contract. [DE 28 at 162–63].

---

[3] Motions are not pleadings. *See* Fed. R. Civ. P. 7; *ISCO Indus., Inc. v. Fed. Ins. Co.*, 587 F. Supp. 3d 558, 566 n.2 (W.D. Ky. 2022); *see also* Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment ("[A] motion is not a 'pleading' as defined in Rule 7."). A party seeking leave to amend generally should attach a proposed pleading to its motion. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). Carrier Marine has not done so here—the motion's final section does not constitute an amended pleading or counterclaim.

5

In reply, Carrier Marine notes that the Yacht Club's response does not address Carrier Marine's argument under Rule 60(b)(6). [DE 30 at 174-75]. Carrier Marine also asserts that the requested relief will not prejudice the Yacht Club as it has known all along that it must pay under the contract. [*Id.* at 175–76]. And, for the first time, Carrier Marine argues that the prayer for relief in its July 2023 amended answer, requesting full payment under the contract, was an effective counterclaim. [*Id.*].

### A. Request for Declaratory Judgment

Carrier Marine's initial request is for the Court to declare judgment for Carrier Marine in the amounts owed to it under the contract. [DE 28 at 162]. The Yacht Club argues that Carrier Marine's request "is clearly a compulsory counterclaim" and therefore should have been asserted in Carrier Marine's answer. [DE 29 at 170–71].

The Yacht Club argues that its complaint compelled Carrier Marine to assert any counterclaims arising from the parties' agreement. *See* Fed. R. Civ. P. 13(a); *see also Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 372 (W.D.N.Y. 2018) (collecting cases). When amending its answer in July 2023, Carrier Marine could have presented any counterclaim to the Court in a motion for leave to amend its answer even without the Yacht Club's consent. Rule 15(a)(2) requires "the opposing party's written consent" *or* "the court's leave." The Court's scheduling order allowed any "motion to amend pleadings" as late as October. [DE 16 at 55]. And at that stage, leave to amend could have been freely given. *See* Fed. R. Civ. P. 15(a)(2). But Carrier Marine did not explicitly raise a counterclaim before the Court entered final judgment.

In its reply brief, Carrier Marine argues for the first time that, under Rule 8(c)(2) and Rule 8(e), it already asserted a counterclaim in its July 2023 amended answer, albeit "without a counterclaim label." [DE 30 at 176]. Carrier Marine points to portions of the amended answer that admitted to this Court's subject-matter jurisdiction, admitted to the contract's description of

6

services, admitted to sending the Yacht Club an invoice for $12,800 plus interest, and "demand[ed]" that the Yacht Club "be required to pay the full amount due," including interest. [*Id.* at 176–77; *accord* DE 17 at 63–65, 68]. The reply argues that these excerpts, when read together, form a "claim for relief" as described in the Rule 8(a) pleading requirements. [DE 30 at 176].

### 1. Compulsory Counterclaim

To determine whether Carrier Marine's instant motion for a declaratory judgment is proper, the Court first assesses whether Carrier Marine was required to assert it as a counterclaim in its amended answer. At the outset, Carrier Marine's request for declaratory relief could very well have been dismissed as a redundant counterclaim under the mirror image rule, which provides for the dismissal of counterclaims that merely seek the opposite effect of the complaint. *See Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987) ("[W]hen a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose."). A counterclaim is considered a "mirror image" if it "restates the issues in the complaint such that resolving the complaint will necessarily resolve the counterclaim." *Allstate Ins. Co. v. Lint Chiropractic PC*, 735 F. Supp. 3d 833, 849 (E.D. Mich. 2024) (quoting *Fed. Deposit Ins. Corp.*, 819 F.2d at *3). Thus, in cases where it is clear that a ruling on the merits of a plaintiff's claim would render a declaratory judgment counterclaim moot, courts have dismissed such claims as redundant. *See, e.g.*, *Allstate Ins. Co.*, 735 F. Supp at 849 (finding that defendants' counterclaim seeking a declaration that the Plaintiff insurance companies had no valid reason to withhold payments "serve[d] no purpose" when this question was "directly addressed by Plaintiffs' fraud allegations"); *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-CV-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) (dismissing defendants' counterclaims as moot when they sought "nothing more than a proclamation that the acts alleged by Plaintiffs [were] not in fact unlawful").

In determining whether a counterclaim is simply a mirror image of the plaintiff's claim, courts consider whether there is "a complete identity of factual and legal issues" such that the defendant's counterclaim will be fully adjudicated by the plaintiff's claim. *Pettrey*, 2006 WL 3342633, at *3. Here, the Yacht Club's initial complaint asked the Court to declare its rights under the contract. Specifically, it asked for declaratory judgment that it owed $6,400 as a flat fee under the contract, not $12,992—the amount invoiced by Carrier Marine. [DE 1 at 7; DE 19 at 76]. Conversely, Carrier Marine's motion seeks declaratory judgment that the Yacht Club owes $12,800 "plus the contractually provided interest, 1.5% per month . . . ," which, at the time of the initial lawsuit, amounted to $12,992. [DE 28 at 162–63; DE 17 at 65]. In other words, the Yacht Club's complaint sought a declaration that the contract provided no basis for the $12,992 invoiced by Carrier Marine—that is, the $12,800 for 16 hours of commercial dive services plus the $192 interest that had accrued by the time of billing—while Carrier Marine's motion seeks a declaration that the contract did provide such a basis. [DE 28 at 162].

The Yacht Club asserts in its response to Carrier Marine's motion for declaratory judgment that "the Court could only rule on the claims before it, which sought judgment on the principal contract amount owed to Defendant, with no mention of interest." [DE 29 at 171]. But the Yacht Club's initial complaint challenged the $12,992 amount, which included the interest that had accrued up to that point. [DE 1 at 7; DE 17 at 65]. Thus, the Yacht Club's complaint inherently incorporated the question of interest. Moreover, the Yacht Club's Complaint also specifically states in Count III that "Section 5 of the General Contract for Services does not account for the difference between the $6,400.00 amount in the General Contract for Services and the $12,992.00 amount invoiced by Defendant to Plaintiff." [DE 1 at 7]. Section 5 of the Contract is titled "Payment" and notes that

8

> any payment which Customer owes Carrier Marine [] shall be deemed earned as such services are performed, with payment to be made without offset or deduction net thirty (30) days after the date on Carrier Marine [] invoice. Late payments shall earn interest at the rate of 1.5% per month, or the maximum amount permitted by law, whichever is less. Customer shall be responsible for and shall reimburse Carrier Marine [] for any and all costs and expenses (including attorney(s) fees) incurred by Carrier Marine [] for collection of payments overdue.

[DE 1-2 at 12].

The two claims raised by the Yacht Club and Carrier Marine have a complete identity of factual and legal issues because they both turn on whether the contract established an hourly rate or a flat fee and whether it provided for the payment of interest. If Carrier Marine *had* brought a declaratory judgment counterclaim, the issues in the counterclaim would have been fully adjudicated by the Court's ruling on the Yacht Club's claim. Put simply, the Yacht Club sought a declaration that the amount invoiced by Carrier Marine was not supported by the contract, and the Court's refusal to grant this declaration settled the issue of whether the Yacht Club owed the invoiced amount. [DE 26 at 157-58]. Requiring Carrier Marine to assert the inverse of what the Yacht Club asserted in a counterclaim would have been redundant, not in the interest of judicial economy, and thus, subject to dismissal. Given that fact, the Yacht Club's assertion that Carrier Marine had to assert the present motion as a counterclaim is unconvincing.

The Court already decided this issue and settled the Yacht Club's obligations under the contract when it asserted that "the plain language of the contract provided for an hourly rate" and "[Carrier Marine] would be entitled to payment of $12,800 for services provided, with applicable interest for late payment consistent with the rate established by the contract." [DE 26 at 157-58]. While the Court stated that it could not grant a declaratory judgment in Carrier Marine's favor due to the lack of a counterclaim, the Court believes such a judgment would have been superfluous. That is, the judgment Carrier Marine requested—that the Yacht Club be "'required to pay the full

9

amount due to CMS under the contract' with unpaid interest"—was the natural corollary of the Court's judgment *against* the Yacht Club. [*Id.* at 158].

Even if the mirror image rule does not apply and Carrier Marine's counterclaim could have been asserted in its answer, that claim would not be precluded from further litigation as a compulsory counterclaim. While "[f]ailing to file a compulsory counterclaim does normally preclude its being made the subject of another lawsuit" pursuant to the doctrine of res judicata, "there is an exception to res judicata for cases in which the only relief sought in the first suit is a declaratory judgment." *Allan Block Corp. v. Cnty. Materials Corp.*, 512 F.3d 912, 916 (7th Cir. 2008); *see also Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372–73 (2d Cir.1992) (noting that "many jurisdictions recognize an exception to ordinary res judicata principles where . . . the prior action involved only a request for declaratory relief," allowing a party to later "pursue further declaratory or coercive relief"); *Bench Billboard Co. v. City of Covington, Ky.*, No. CIV.A. 06-75-DLB, 2012 WL 2919158, at *3 (E.D. Ky. July 17, 2012), *aff'd*, 547 F. App'x 695 (6th Cir. 2013).

The courts have recognized several reasons for this exception. First, "if the defendant had to bring his claims against the plaintiff as counterclaims in the declaratory judgment action, declaratory judgments would become devices for thwarting the choice of forum by the defendant, even though, in many declaratory judgment suits, . . . the plaintiff is seeking declaratory relief in order to defeat preemptively a claim by the defendant." *Allan Block Corp.*, 512 F.3d at 916; *see also Cummins, Inc. v. TAS Distrib. Co.*, 676 F. Supp. 2d 701, 711 (C.D. Ill. 2009), *aff'd*, 700 F.3d 1329 (Fed. Cir. 2012) ("Without the [exception], plaintiffs would preemptively seek declaratory judgments when and where they chose [sic], and defendants would be forced to bring any claims at that time and place."). For this reason, courts have stated that Rule 13(a)'s provision on

compulsory counterclaims should not bar a defendant from later bringing a suit based on a claim "that might be thought a compulsory counterclaim in a declaratory judgment action." *Id.* at 917; *see also* 18A Wright & Miller's Federal Practice & Procedure § 4446 (3d ed.).

Second,

> "[t]he whole point of a declaratory judgment action is to decide only a single issue in dispute, one that is often preliminary as subsequent events will need to occur before a traditional lawsuit can be pursued." For that reason, declaratory judgments are often prefaces to later actions for damages or an injunction. Claim preclusion would make these later actions impossible. Applying ordinary claim preclusion to declaratory judgments would thus be in tension with § 2202, which contemplates these types of later, supplementary actions

*Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835 (6th Cir. 2019) (citations omitted). In other words, declaratory judgments serve to "declar[e] in one action the rights and obligations of litigants" but do not themselves supply coercive remedies. 10B Wright & Miller's Federal Practice & Procedure § 2751 (4th ed. 2025). It would defy logic for a party to escape the "rights and obligations" established in a declaratory judgment by claiming that a litigant's subsequent attempt to enforce those rights should have been raised in the initial action.

Here, the Yacht Club's declaratory judgment action settled the issue of the parties' obligations under the contract. Carrier Marine could now seek to enforce those obligations in a separate action but has instead moved the Court to declare judgment in its favor in the original action. [DE 28]. The Court believes that such a declaration should be unnecessary given that it has already denied Yacht Club's corresponding motion for declaratory judgment and has stated that the terms of the contract require payment of $12,800 plus interest. However, it appears that the Yacht Club is attempting to evade its contractual obligation by latching onto the Court's statement that it could not affirmatively grant a declaratory judgment in Carrier Marine's favor when "[Carrier Marine] never asserted a counterclaim." [DE 26 at 158]. Thus, the Court will revisit this

11

language from its Order and consider whether the Court was correct in stating that it could not affirmatively declare judgment in favor of Carrier Marine without a specifically designated counterclaim. As a result, the Court will next consider whether Carrier Marine's amended answer—including the admissions and denials and prayer for relief—was sufficient to put the Yacht Club on notice as to Carrier Marine's claim for $12,800 plus interest, and, therefore, whether granting a declaratory judgment to Carrier Marine would have been an appropriate result.

### 2. Carrier Marine's Amended Answer

Rule 8 of the Federal Rules of Civil Procedure provides that to state a claim for relief, a pleading must contain the following: (1) "a short and plain statement of the grounds for the court's jurisdiction[;]" (2) "a short and plain statement of the claim showing the pleader is entitled to relief;" and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). The short and plain statement of the claim "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration omitted). Rule 8 also makes clear that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002) (explaining that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim"). Rule 8(e) "reinforce[s] the general mandate in Federal Rule of Civil Procedure 1 that the federal rules should be construed to secure the just, speedy, and inexpensive determination of every action and the statement in Rule 8(d)(1) that no technical forms of pleadings are required." 5 Wright & Miller's Federal Practice & Procedure § 1286 (4th ed.); Fed. R. Civ. P. 1; Fed. R. Civ. P. 8(d)(1). Pursuant to these liberal pleading requirements, the Court must not "rely solely on labels in a [pleading], but . . . probe deeper and examine the substance of the pleading." *Minger v. Green*,

239 F.3d 793, 799 (6th Cir. 2001). In fact, "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *Id.* ((quoting *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955)).

Rule 8(e) emphasizes the importance of interpreting pleadings in a manner that ensures fairness and justice as opposed to strict adherence to technicalities and allows the Court to consider the substance of the pleadings and the relief sought, even if they are not perfectly labeled or formatted. Moreover, Rule 8(a) requires simply that the opposing party be put on notice of the basis for the claim. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002) ("Rule 8(a)'s express language [ ] requires simply that the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). In *Kattawar v. Logistics and Distribution Services, Inc.,* the court emphasized that whether the declaratory relief is sought as a separate cause of action or as a prayer for relief, it must put the opposing party on notice of the claim. 111 F. Supp. 3d 838 (2015).

There is no doubt that Carrier Marine's amended answer put the Yacht Club on notice of Carrier Marine's claim. Even if not specifically labeled as a "counterclaim," the substance of Carrier Marine's amended answer nonetheless contains the hallmarks of a claim. First, Carrier Marine admitted that the Court had jurisdiction under the grounds asserted by the Yacht Club. [DE 17 at 63]. Second, Carrier Marine provided a short and plain statement of the claim establishing that it was entitled to relief by stating that it sent an invoice to the Yacht Club for "16 hours of commercial dive service in the amount of $12,800, plus interest on the unpaid balance in the amount of $192, for a total of $12,992." [*Id.* at 65]. Third, Carrier Marine asserted a demand for relief by demanding that "the Plaintiff be required to pay the full amount due to [Carrier Marine]

under the Contract" and "that Plaintiff be required to pay the interest on its unpaid balance to date in accordance with the contract." [*Id.* at 68].

While not explicitly labeled a "counterclaim," the text of Carrier Marine's amended answer accomplished the purpose of Rule 8: to put the Yacht Club on notice of its claims. Because pleadings must be construed not with strict adherence to the form, but to do justice, the Court finds that these portions of Carrier Marine's amended answer must be interpreted as a counterclaim. This is the most just interpretation because it derives from the substance of Carrier Marine's amended answer as opposed to its technical form. This interpretation also reflects the undeniable fact that the Yacht Club was put on notice of Carrier Marine's claim for relief and ensures that the Yacht Club does not escape its contractual duty on a mere technicality.

For these reasons, the Court finds that it was incorrect in stating that it could not affirmatively declare judgment in favor of Carrier Marine without an explicitly designated counterclaim. [DE 26 at 158]. Rather, Carrier Marine's amended answer gave the Yacht Club sufficient notice of the claim; the Yacht Club cannot now claim that it was unaware of this counterclaim. Although the Court believed that it could only deny the Yacht Club's request for relief, not grant affirmative declaratory relief to Carrier Marine, a grant of declaratory judgment for Carrier Marine would have been appropriate for all the reasons stated above. In fact, such a finding is merely the mirror image of what the Court already found in denying the Yacht Club's request for declaratory relief on the issue of contract interpretation. The grant of judgment for Carrier Marine would merely affirmatively state the natural result of its initial judgment. Thus, the Court finds that Carrier Marine's claim for a declaratory judgment should have been granted. While Carrier Marine moves for declaratory judgment independent of its motion for relief under Rule 59, [DE 28], the Court may not independently grant this motion without amending its final

14

judgment. Accordingly, the Court next considers whether it would be appropriate to alter its judgment under Rule 59 pursuant to the Court's finding that Carrier Marine was entitled to affirmative declaratory relief.

### B. Altering or Amending the Judgment

Carrier Marine argues that "Rule 59 . . . allows for relief in accordance with the one sought in [its] Motion" and asks the Court under Rule 59 to "amend its Pleadings and its Counterclaim as set forth" in the motion. [DE 28 at 163]. The Yacht Club responds that Carrier Marine has not identified any clear error of law or presented any newly discovered evidence and, further, that Carrier Marine cannot raise arguments under Rule 59 which could have been raised pre-judgment. [DE 29 at 171–72].

Rule 59(e) allows a party to move "to alter or amend a judgment [within] 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). For a court to grant a motion under Rule 59(e), there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006)). While there is no clear definition of "manifest injustice," courts have recognized that it encompasses situations in which there was a "fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *McDaniel v. Am. Gen. Fin. Services, Inc.*, No. 04-2667, 2007 WL 2084277, at *2 (W.D. Tenn. 2007); *see also United States v. Allen*, No. CR 14-20191, 2020 WL 4592901, at *1 (E.D. Mich. Aug. 11, 2020). The Court has "considerable discretion" in deciding whether to grant a motion under Rule 59. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

First, the Court's judgment was entered on August 15, 2024, while Carrier Marine's motion to alter or amend the judgment was filed on September 12, 2024. [DE 27; DE 28]. The motion was thus timely because it was filed within 28 days after the Court's entry of judgment. Moreover, while a party "cannot use a Rule 59 motion . . . 'to raise arguments which could, and should, have been made before judgment issued,'" Carrier Marine *did* raise the argument that it is owed $12,800 plus interest under the contract. *Leisure Caviar*, 616 F.3d at 616 (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998)). Amending the Court's judgment to grant declaratory judgment in favor of Carrier Marine is necessary to prevent manifest injustice because the Court erred in determining that Carrier Marine had not asserted an effective counterclaim or, similarly, erred in determining that it could not grant the relief requested by Carrier Marine in its amended answer. As detailed above, Carrier Marine's amended answer set forth the basis for its claims and demand for relief, but simply failed to label such claims as counterclaims. Failing to correct this error could leave Carrier Marine without relief, which, under the circumstances, would be inequitable. Finally, there is no surprise or prejudice to the Yacht Club, given that the Yacht Club was on notice of Carrier Marine's claim and the Court's initial judgment declared that "[Carrier Marine] would be entitled to payment of $12,800 for services provided, with applicable interest for late payment consistent with the rate established by the contract." [DE 26 at 158–58]. As the Court has already stated, the initial judgment denied the Yacht Club's request for declaratory judgment as to its claim that it did not owe the $12,992 invoiced by Carrier Marine, including the $12,800 due in accordance with the contract's description of services, [DE 19-1 at 80], and interest due under section 5 of the contract, [*id.* at ¶ 5], both of which were discussed at length in the original motion for summary judgment. [DE 26

16

at 155–57]. The natural effect of the Court's denial is that the Yacht Club did owe the amount invoiced. The Court now merely corrects the language of its judgment to reflect that reality.

For the reasons set forth above and because no prejudice would result to the Yacht Club, the Court finds that altering its judgment is necessary to prevent manifest injustice to Carrier Marine. Consequently, the Court will alter its judgment to grant declaratory judgment to Carrier Marine and declare that Carrier Marine is entitled to payment of $12,800 for services provided, with applicable interest for late payment consistent with the rate established by the contract—1.5 percent per month on outstanding balances. Given that the Court grants relief under Rule 59, no discussion of Carrier Marine's Rule 60 argument is necessary.[4] The Court also need not consider Carrier Marine's motion to amend its pleadings given the Court's finding that Carrier Marine's initial amended answer effectively asserted a counterclaim.

---

[4] Because Carrier Marine filed its motion for declaratory judgment within 28 days of the Court's entry of judgment, the Court may alter its judgment based on the more forgiving Rule 59(e) and there is no need to discuss the more stringent Rule 60 standard. The Court's failure to recognize Carrier Marine's counterclaim could entitle Carrier Marine to relief under Rule 60(b)(1), which provides for relief in cases of judicial error. *See Kemp v. United States*, 596 U.S. 528, 539 (2022). However, "courts of appeals have long treated Rule 60(b) motions filed within 28 days as . . . Rule 59(e) motions." *Banister v. Davis*, 590 U.S. 504, 537 n. 9 (2020); *see also Skagerberg v. State of Okl.*, 797 F.2d 881, 883 (10th Cir. 1986) ("[R]egardless of how it is characterized, a post-judgment motion made within [28] days of the entry of judgment that questions the correctness of a judgment is properly construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e)."). Consequently, even if Carrier Marine had only moved for relief under Rule 60, the Court would treat it as a Rule 59(e) motion.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Carrier Marine's motion to alter or amend judgment pursuant to Rule 59 [DE 28] is **GRANTED**. The Court will enter an amended judgment reflecting the Court's ruling herein. This is a final and appealable order, there being no just cause for delay.

Rebecca Grady Jennings, District Judge
United States District Court

September 29, 2025